UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**FILED**

JUL 2 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Mark Alan Lane  #06563·028 F.C.I.
        Plaintiff
ATLANTA, P.O.B 150160
        vs.   GA. 30315                )
                                        )
                                        )
                                        O
                                        )
Federal Bureau of Prisons,ET AL )
Harrell Watts, Administrator    )
national inmate appeals         )
Michael K. Nalley, Regional     )
Director                        )
W.A. Sherrod, Warden,           )
F.C.I. Greenville               )

Case: 1:08-cv-01269
Assigned To : Unassigned
Assign. Date : 7/24/2008
Description: Pro Se Gen. Civil

Pro-Se
Privacy Act Suite

    Comes now, The plaintiff, Mark Alan Lane, Pro-se and notifys
this court that the Bureau of Prisons,ET AL fails to maintain
any record concerning any Indivdual with such accuracy, relevance
timeliness, and completeness as is necessary to assure fairness
in any determination relating to the Qualifications, character,
rights or opportonities of, or benefits to the Individual that
may be made on the basis of such records, and consequently a
determination is made which is adverse to the Individual.
See: Title 5 U.S.C. 552a (e)(5) and (g)(1)(C)

JURISDICTION

    Jurisdiction is invoked pursuant to Title 5 United States
Code 552a (g)(4). Thus Jurisdiction is properly invoked.

**RECEIVED**

JUL - 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STATEMENT OF FACT

In Sellers V. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992) the court held that the Bureau of Prisons must maintain accurate records of information which are capable of being Veried.

On January 04, 2007., The plaintiff made a request to unit staff for a "SELLERS" Letter to verify ( Drug Amount, base offense level) information in my central file. In remedy # 438889 The regional director "GRANTED" the sellers memorandum and unit staff will forward the Sellers memorendum to the appropiate U.S. Probation Office (U.S.P.O.) to inform them of the disputed information and request a written response be provided.    ATT: 1- 7

On March 15, 2007., Unit Staff wrote a cover sheet but didnot ask that a written response be provided for the disputed information. On March 28, 2007., The plaintiff, wrote a letter back to the U.S. Probation Officer to address the March 21, 2007., letter. (1)                                        ATT: 8- 12

On May 02, 2007., The plaintiff started remedy # 451612. The plaintiff wanted to create a record that the Bureau of Prisons was "Willfully" and "Intentionally" failing to maintain records that are under the Jurisdiction and controll of the Bureau of Prisons. The SELLERS memorandum and program statement 5800.11., provides specific instruction regarding inmates challenges to the accuracy of information contained within the inmates central file.                    ATT: 13- 31

The U.S. Probation Office would never "Verify" the 235 pounds with a chemist report, Base offense level 38 or in par 54 of the presentence report (sentencing option) a base offense level 46. See: 2D1.1 of the drug chart and guildline provision. The Bureau of Prisons (F.C.I. Greenville) and the probation office was sent a chemist report for 770 grams, a base offense level 32.

---

On March 21, 2007. The probation office said the 235 pounds came from an out of court statement to law enforcement regarding Mr. Lanes trafficking activities on Sept. 01, 2000. In the February 12, 2008., letter from the probation office, now the 235 pounds is relvant conduct 1B1.3 from statements of other indivial.

In an unexplained move by Mr. Harrell Watts, Administrator National inmates appeals. Mr. Watts claims that the maintenance and accuracy requirement of the privacy act are no longer applicable. The plaintiff didnot make an freedom of information act and privacy act request. Title 5 U.S.C. 552a(d) or program statement 1351.05, Release of Information. Nor do you find the drug amount in the "Offense conduct charged". My Indictment is 846, 500grams 841(a)(1). The court switched the crime charged. The presentence report and criminal judgement shows 841(a)(1) excess of 15 Kilograms, 846 and 841(a)(1) excess of 500grams, 846 (Hearsay).

On September 25, 2007., The plaintiff started remedy # 467747. request for an accurate presentence report from the probation office. I took the bureau of prisons operations memorandum and used that as an outline to follow, (exhibits 4/ ). In the event the plaintiff had to file in district court.                    ATT: 32-52

The plaintiff has a custody score of Eight (8) to (13)., point that is a low or camp. The plaintiff has a public safety factor that comes from the sentence length. The sentence length comes from the drug amount (360 months on a drug count 841(a)(1)., level 46-4=42., Which = 360 months to life (illegal). ②

The Bureau of Prisons is using the 2001 presentence report to make decision adverse to the plaintiff. The Bureau of Prisons and Individual defendants have voilated the privacy act, 5 U.S.C. 552a(e)(5) and (g)(1)(c) by failing to maintain accurate records. The presentence report adversely affects determination by the Bureau of Prisons regarding "Custody" and "Security Classification".

---

② The plaintiff wants to attach the letters from the Office of the Inspector General and D.O.J., Civil Rights. The Civil Rights asked the bureau of prisons to take action.     ATT: 53-58

The plaintiff request that this be investagated by the proper authoritys, such as the Office of Professional Responsibilty, Dale K. Hall., 950 Pennsylvania Ave., Washington, D.C. 20530.

PRIVACY ACT CLAIM

The privacy act requires the Bureau of Prisons to maintain any record concerning any Indivdual with such accuracy, relevance timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights or opportonities of, or benefits to the Individual that may be made on the basis of such records, and consequently a determination is made which is adverse to the Individual in violation of section (e)(5), (g)(1)(c) and (g)(4) of the act.

The plaintiff seeks amendment of the 2001 presentence report and money damages, contending that the Bureau of Prisons violated section (e)(5), (g)(1)(c), and (g)(4) of the act by using the incorrect information.

Respectfully

Mark a. Lane   6-1-08

  Mark Alane Lane/ Date
#06503-028

    When A Federal Judge violates his "OATH OF OFFICE" his orders would be void(EX. 47 to 52  and EX. 54 ). The petitioner would request an Declaratory Judgement of his Rights. The petitioner is also requsting an Injunctive Order agaist Bureau of Prisons Staff.

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **LANE, Mark A.**        **06503-028**    **H2B**    **GreenVille**
‾‾‾‾‾‾‾LAST NAME, FIRST, MIDDLE INITIAL‾‾‾‾‾‾‾‾   ‾‾‾‾REG. NO.‾‾‾‾   ‾‾UNIT‾‾   ‾‾INSTITUTION‾‾

**Part A— INMATE REQUEST**

Ms. Revell,
    My Public Safety Factor comes From My Sentence length.
My Sentence length comes From the Drug Amount. I have a
Coustody Score of Eight (8), If My records were Accurate
I Would be at a Camp! (No Priors)
    When they changed My Charge to 500 Kilograms they
Made a whole New Guidline of 46, No Crime goes
Above a level 43. Sentencing options in my
Presentence report.
    I Like Pushing a Pen, I have Nothing but time to Lay
the Ground work for a disaster! ATT: 1-2

‾‾‾1-07-07‾‾‾‾   Sellers            ‾‾‾‾‾Mark A. Lane‾‾‾‾‾
‾‾‾‾DATE‾‾‾‾                        SIGNATURE OF REQUESTER:

**Part B— RESPONSE**

‾‾‾‾DATE‾‾‾‾                        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                CASE NUMBER: ‾‾‾‾‾‾‾‾‾‾‾‾

                                          CASE NUMBER: ‾‾‾‾‾‾‾‾‾‾‾‾

**Part C— RECEIPT**

Return to: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION
SUBJECT: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

‾‾‾‾DATE‾‾‾‾                        RECIPIENT'S SIGNATURE (STAFF MEMBER)        BP-229(13)

On January 4, 2007, I met with the Unit Team to discuss a "Sellers" Letter. I was informed, they don't feel my request would come under Sellers?

I know that every record that the Bureau of Prison (B.O.P.) Maintains on me is supposed to be accurate.

I was informed, they felt this would be a job for an Attorney. For the Record! I had a Direct Appeal, then I done a Title 28 §2255 Motion. I feel it's important to follow the proper steps, they looked at the fact my presentence report was done in 2001.

The Statute for the crime is Title 21 §841(b)(A)(1) <u>Not</u> 841(a)(1) or 846.

The drugs were found by the the wrong standard, perpondence. I gave a copy of the expert witness and it shows 770 grams beyond a reasonable doubt.

I gave my Indictment which shows My Offense Code as 841(a)(1). I tried to point out, "you can not conspire by yourself". Nor does My Indictment List at least one persons name.

I even gave them a copy of the Guidelines which shows 2D1.1(c)(4) as a Level 32 or 121 to 151 months.

2D1(c)(1) is excess of <u>15</u> Kilograms and that is a Base Offense Level 38 or 235 to 295 months.

It may be unusal but the drugs would be the Focus of a Sellers Letter due to the Fact, that's the crime.

For your records to be accurate you would need two (2) things; 1) The Drugs, 33 pounds or more Beyond a Reasonable Doubt and 2) An Indictment that says excess of <u>15</u> Kilograms.

False Imprisonment is Illegal and it will open a door were I can sue you if you try to hold me past the 120 months. I gave you this U.S. Attorney Oath and it clearly states "He is <u>not</u> Bonded." You are Bonded and so is he!

2

**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #438889-F2**

This is in response to your Request for Administrative Remedy received on January 23, 2007, in which you believe that the drug amount that you were sentenced under is incorrect, and you requested a Seller's letter be written to contest the information in your pre-sentence investigation.

A Seller's letter is used to petition a U.S. Probation Office to contest information contained in a pre-sentence investigation report. You claim that the drug amount in your conviction is inaccurate and that you have been wrongly sentenced because of this fact. However, all of the information contained in your pre-sentence investigation report matches the information from your Judgement and Commitment Order. Likewise, your Judgment and Commitment Order will remain in effect until a court with competent jurisdiction has either modified or otherwise vacated your current sentencing. Therefore, no information in your pre-sentence investigation report will be amended nor will a letter be sent to the U.S. Probation department requesting them to modify your pre-sentence investigation report.

Based on the above information, your Request for Administrative Remedy has been denied. If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_____          _____
Sara M. Revell, Warden                       Date 1/26/07

EX- 3

**U.S. Department of Justice**

*recent*

NOV 1 6 2005

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Staff*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

---

Requester: **Mark Lane**                   Request Number: **05-1729**

Subject of Request: **Brad Blackington (Oath of Ofc.) Southern District of Indiana**

Dear Requester:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. *JUL 26 2005* This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' offices. To provide the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    All of the records you seek are being made available to you. We have processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. **This letter is a full release.**

    You may appeal this determination by writing within 60 days to the Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530

    This is the final action this office will take concerning your request.

Sincerely,

Marie A. O'Rourke
Assistant Director

Enclosures

No. 021A - no fee - 2/04

EX - 4

NOTE: Assistant U.S. Attorneys are not bonded.

EX - 5

STANDARD FORM 61
Revised June 1986
U.S. Office of Personnel Management
FPM Chapter 296
61-106

# APPOINTMENT AFFIDAVITS

Assistant United States Attorney
*(Position to which appointed)*

May 20th, 1999
*(Date of appointment)*

Department of Justice   U.S. Attorney's Office   Indianapolis, IN
*(Department or agency)*   *(Bureau or Division)*   *(Place of employment)*

I, Bradley Blackington , do solemnly swear (or affirm) that—

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

*(Signature of appointee)*

Subscribed and sworn (or affirmed) before me this 22nd day of June , 19 99 ,

at Indianapolis                    IN
*(City)*                          *(State)*

[SEAL]

*(Signature of officer)*

Notary
*(Title)*

Commission expires December 9, 2006
(If by a Notary Public, the date of expiration of his/her Commission should be shown)

**NOTE.**—*The oath of office must be administered by a person specified in 5 U.S.C. 2903. The words "So help me God" in the oath and the word "swear" wherever it appears above should be stricken out when the appointee elects to affirm rather than swear to the affidavits; only these words may be stricken and only when the appointee elects to affirm the affidavits.*

NSN 7540-00-634-4015    U.S. Government Printing Office: 1996 - 404-765/20083    Prior Edition Usable

EX-6

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

Admin Remedy Number:  438889-R1

This is in response to your Regional Administrative Remedy dated February 5, 2007, in which contest your BP-9 decision, denying the submission of a "Sellers" memorandum to the United States Probation Office (USPO) as you believe the base offense level drug calculations is incorrectly scored in your Presentence Investigative Report (PSIR).

We have reviewed your appeal as well as your submitted evidence.  Pursuant to Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, page 19, c, Inmate Challenge to Information, a "Seller's" memorandum is in accordance with your request.  The Unit Team will initiate and forward a "Seller's" memorandum to the appropriate U.S. Probation Office (USPO) to inform them of the disputed information and request a written response be provided.   Be advised, the policy also stipulates that USPO procedures do not allow for changes or addendums to be made to the PSIR after sentencing, since it is a court document.

Based on the above information, your Regional Administrative Remedy Appeal is granted.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

2/28/07
Date

Michael K. Nalley, Regional Director

EX- 7



**U.S. Department of Justice**

**Federal Prison System**
*Federal Correctional Institution*

―――――――――――――――――――――――――――――――――――――――――――

*100 U.S. Hwy 40 & 4th Street*
*Greenville, Illinois  62246*

March 15, 2007

Barb Roembke, Chief
United States Probation Office
Southern District of Indiana
101 U.S. Courthouse
46 East Ohio Street
Indianapolis, Indiana 46204

Re: LANE, Mark
Reg. No.: 06503-028
Docket No.: 3:01CR00003-001

Dear Ms.Roembke:

The above inmate has presented information to his unit team indicating certain information in his Pre-Sentence Investigation Report is inaccurate.  The Bureau of Prisons has an obligation to contact the probation department to present the inmate's concerns.

Inmate Lane was originally sentenced in the Southern District of Indiana on February 27, 2002, to a 360 month term of incarceration for Conspiracy to Possess with Intent to Distribute and Distribute Methamphetamine and Conspiracy to Launder Monetary Instruments.  Please see his attached concerns regarding his case and the information located in his PSI.

Please advise us of your findings.  Thank you for your assistance in this matter of mutual concern.

Sincerely

Dennis Pickens
Unit Manager

8

I Wanted to Write a Sellers Memorandum
to Verify the accuracy of Mr. Lane's
records (Presentence report and Criminal Judgment.
    The Drug crime or Instant offense
Would come from August 31, 2000 and
September 1, 2000. IT would also appear
Mr. Lane Was Not formally charged in
STAte Court on September 1, 2000. (530.5
grams, expert Witness). ON February 14, 2001.
Mr. Lane Was Indicted For Drug and
Money Laundering. (Indictment)
    ON September 10, 2001. Mr. Lane plead
guilty as charged to 500 grams, Not
the Indictment. 846, 841(a)(1)
    Does the 235 pounds exist?, and "Due
Process" would require it to be Charged in
the Indictment. The Guild line Provision
Would be excess of 15 Kilograms or a
base offense level 38. (presentence report)
    ON February 28, 2002. the Court had
to use the Word "Confession", as a
STipulation for (Relevant Conduct) 1B1.3, or
to Find the 235 pounds existed. IF it
Would be a STipulation to a more Serious
offense, the Terms of the plea are to be
in open Court in writing or orally
made on the record.

9

Mr. Lane has No priors and his Public Safety Factor Comes From the Sentence length and the Sentence length Comes From the Drug Amount. IF his records are in error it Would EFFect his Custody Classification and release Date.

Please review the relevant Dates and Facts that are Attached.[1,2] I hope to receive Verification of a Stipulation or a Grand Jury Indictment Since this Deals with the Corpus delicti, SEE Title 21 § 841 (b)(1)(A)(iii) or presentence report page per 53 and 54.

Foot Note:

10

## Relevant Dates & Facts:

1. On January 25, 2001 I was arrested on a Federal Criminal Complaint, Warrant No: EV01-04M-01 "Conspire to Possess" or 841(a)(1) 500 grams, 846., Liz Hill on August 29, 2000. Removed from State

2. On February 14, 2001 I was Indicted for a Conspiracy involving 500 grams or 846, 841 (a)(1).

3. On March 13, 2001 I Appeared for a Bond Hearing and the Reading of my Indictment, (Rule 10). I can't buy or get the reading of my Indictment?. Lost or Destroyed.

4. My Presentence Report reads as I had my Initial Appearance on January 25, 2001.

5. On September 10, 2001 I plead guilty as charged, 500 grams. My Factual Basis would be "Beyond a Reasonable Doubt". My Factual Basis is the Face of the Indictment, 846, 841 (a)(1).

6. The Face of the Indictment would be a "Conspiracy to Distribute" in excess of 15 Kilograms (846). The Drug Count would be the 500 grams (841 (a)(1)) or Expert Witness.

7. If I don't "Proffer" to the Conspiracy Count (846), the Investigation would end. The Court was not supposed to read my Indictment on September 10, 2001.

8. On February 13, 2002 My Attorney files the Addendum to the Presentence Report. I told him to get the Drug Conspiracy out, (841 (a)(1) excess of 15 Kilograms 846.

9. On February 14, 2002, "Fax" from the Court to Scott Danks. A Federal Judge is Immune from any Error as long as it is a Court Order or Proceeding. That "Fax" does not fall in a Court Order or Proceeding.

10. The Fax is my Pretrial Contenence (P.T.C.) from September 05, 2001, on February 28, 2002., The Court read only parts of it and was twisting the dates of September 5, 2001 and September 10, 2001. To have the Government Proffer, the Indictment must be in Violation of 846.

11. At Sentencing on February 28, 2002, the Court found by the "Preponderance of Evidence Standard", I stood Convicted of 235 Pounds or excess of 15 Kilograms.

12. I don't need for anybody to tell me what my records show. I can back up what I say!

12

13. My Criminal Judgement shows Title 21§ 841 (a)(1) and 846., What none of you

know is it would be: Title 21§ 841 (a)(1) and 846, 841 (a)(1), excess of 15

Kilograms _846_ , 500 grams.

14. My Direct Appeal is unpublished and My Presentence Report was used IN-CAMERA

(Judges Chambers). 846, 841 (a)(1)., The Drug Count 841 (a)(1)., which is the

crime, that's deleted. (770 grams)  U.S. V LANG 52 Fed. Appox 838,

2002 WL 3176 9476 ,

15. My 2255 Motion was a Box Pattern.

Indictment - 2-14-01., - 846, 500 grams 841 (a)(1)  →            Level 46 - 4 = 42

2002

Plea - 9-10-01                    (500 Kilograms)      360 TO LIFE

15 Kilograms        "Due Process"    #1          →     2-28-02

                   235 POUNDS

844 (a)(1)

   8

   4                                                   #2

   6                                          Stipulation to a more

841 (a)(1)                                    serious offense then

500 grams          1 B1.1(a)                  charged in the Indictment

12

REQUEST FOR ADMINISTRATIVE ...

DEPARTMENT OF JUSTICE
...ral Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| | 06503-028 | H-2-B | GREENVILLE FCI |
|---|---|---|---|
| ...om: LANE, MARK A. | REG. NO. | UNIT | INSTITUTION |
| LAST NAME, FIRST, MIDDLE INITIAL | | | |

**Part A- INMATE REQUEST**    I love the way so many people work against me and I don't understand why?

I know a 'Sellers' letter was written and I had to write a Second (2) letter dated 3-28-07.

The purpose of the letter is to 'Verify' the facts in my Presentence Report.

➤ I let it be known I wanted this Remedy to go all the way to the Office of General Counsel. I will keep my fingers crossed that they Verify (Probation Office) my Records.

➤ I only want to **create a Record** that you 'willfully' and intentionally' failed to Maintain Your Records.

The Constitution is a contract from the Government to the American People. This is about my life, my freedom and my family.

I'm truly amazed! I want to thank you for your time and effort in this matter!

*C.C. File,*
*Family*

ATT: 1-6
A-D

*Mark A. Lane*
SIGNATURE OF REQUESTER

5-02-07
DATE

**Part B- RESPONSE**

WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this respon...

DATE

CASE NUMBER: 45/6 12-F...

CASE NUMBER: _____

ORIGINAL: RETURN TO INMATE

| | | | |
|---|---|---|---|
| | REG. NO. | UNIT | INSTITUTION |

**Part C- RECEIPT**
Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL

SUBJECT: _____

RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP

EX 13

**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #451612-F1**

This is in response to your Request for Administrative Remedy received on May 3, 2007, in which you seek to "verify" the facts contained in your pre-sentence report.

A Seller's letter was written and sent to the United States Probation Office, Southern District of Indiana, on your behalf on March 15, 2007. This letter was written in accordance with established policy.

A response to your concerns was given to you by the United States Probation Office. The response was clear and addressed your specific issues in your pre-sentence report.

Based on the above information, your Request for Administrative Remedy has been denied. If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_5-15-07_
Date

_Amber Shelds_
W. A. Sherrod, Warden

EX- 14

cur. 5 U.S.C.A. § 552a(e)(5), (g)(1)(C), (g)(4).

　　See publication Words and Phrases for other judicial constructions and definitions.

3. Records ⟜31
　　Bureau of Prisons and Parole Commission did not satisfy requirements of Privacy Act by simply noting in inmate's files that he disputed some of information contained therein; challenged information was capable of being verified. 5 U.S.C.A. § 552a(e)(5), (g)(1)(C), (g)(4).

4. Records ⟜31
　　As long as information contained in agency's files is capable of being verified, then, under Privacy Act, agency must take reasonable steps to maintain accuracy of information to assure fairness to individual and, if agency willfully or intentionally fails to maintain its records in that way, and consequently makes determination adverse to individual, it will be liable to that person for money damages. 5 U.S.C.A. § 552a(e)(5), (g)(1)(C), (g)(4).

Appeal from the United States District Court for the District of Columbia Civ. No. 87-2048.

Julie M. Carpenter (appointed by the Court) with whom David W. DeBruin was on the brief, for amicus curiae urging that the judgment of the District Court be reversed. W. Foster Sellers, pro se, also entered an appearance for appellant.

William J. Dempster, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees.

Before: MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

claiming that the agencies maintained inaccurate information in his inmate files. Mr. Sellers sought amendment of his records and money damages, contending that the agencies violated sections (e)(5), (g)(1)(C), and (g)(4) of the Act by using the incorrect information in determinations adverse to him. Relying on this Court's decision in Doe v. United States, 821 F.2d 694, 701 (D.C.Cir.1987), the United States District Court for the District of Columbia granted appellees' motion for summary judgment, holding that the agencies satisfied the requirements of the Privacy Act simply by noting in Mr. Sellers's prison records that he disputed the information contained in the records. We reverse the district court and remand for further consideration of Mr. Sellers's claims. The agencies do not meet the Act's requirements by indicating that the appellant disputes the information in his prison files.

I. BACKGROUND

In 1986, while an inmate in federal prison, Mr. Sellers asked to see two presentence reports held in his files at the Parole Commission and the Bureau of Prisons. Mr. Sellers alleged that the presentence reports contained inaccuracies, specifically, one of the reports, prepared in 1979, contained a reference to an alleged bank robbery in North Carolina. Appellant claimed that the bank robbery charge had subsequently been dismissed.

After he contacted the probation office that prepared the 1979 presentence report, Mr. Sellers was told that the 1979 presentence report and had asked the Parole Commission to return it without considering it. But neither agency returned the report. Instead, the Parole Commission used the report when it denied Mr. Sellers's parole in October of 1986. Furthermore, Mr. Sellers claims that the Bureau of Prisons used the 1979 presentence report in making deci-

Commission, and two individual defendants violated the Privacy Act, 5 U.S.C. § 552a(e)(5) and (g)(1)(C), by failing to maintain accurate records, and § 552a(d) and (g)(1)(A) by failing to amend inaccurate files. His complaint alleged that the Parole Commission used the 1979 presentence report in its decision denying him parole in 1986. The complaint also claimed that the allegedly erroneous presentence report adversely affected determinations by the Bureau of Prisons regarding custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time. In addition to the claims surrounding the 1979 presentence report, the complaint further alleged that other inaccuracies in Mr. Sellers's prison records resulted in decisions adverse to him. Mr. Sellers sought amendment of his records and money damages.

The district court dismissed Mr. Sellers's complaint, holding that appellees' systems of records were exempt from the amendment provisions of the Privacy Act. Sellers v. Bureau of Prisons, No. 87-2048, slip op. at 1, 1988 WL 109007 (D.D.C. Sept. 29, 1988). The district court also dismissed the claims against the two individual defendants and transferred Mr. Sellers's habeas claims to the Illinois judicial district in which he was incarcerated at the time. Id.

This Court summarily affirmed the district court's order dismissing the two individual defendants and the Privacy Act claim under section 552a(d). Sellers v. Bureau of Prisons, No. 88-5093, slip op. at 1 (D.C.Cir. June 13, 1989). The Court remanded Mr. Sellers's Privacy Act claim under section 552a(e)(5), however, holding that regulations governing the Bureau of Prisons and the Parole Commission do not exempt those agencies' records from section (e)(5) of the Act. Accordingly, this Court remanded the section (e)(5) claim to the district court "to determine whether

the district court ...
of the A...

Mr. Seller...
court's deci...
agencies' mo...
See Sellers v...
5197, slip op...
Apr. 15, 199

A. Mootnes...

[1] On Ju...
mission revi...
claim that the...
Sellers's Privacy...
was improp...
decision. A...
olina bank r...
considered,...
Sellers's of...
range. The...
ever, that...
guideline ra...

EX-3

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

FILED
U.S. DISTRICT COURT
_ _ DIVISION

01 FEB 14  PM 4:07

SOUTH _ _ _,
_ _ INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES OF AMERICA,           )
                                    )
                 Plaintiff,         )       CAUSE NO. EV 01-3CR-01-Y/H
                                    )
          v.                        )
                                    )
MARK ALAN LANE,                     )
                                    )
                 Defendant.         )

## INDICTMENT

## COUNT ONE

The Grand Jury charges that:

Beginning in or around June, 1999, the exact date being unknown to the Grand Jury, and continuing up to and including September 1, 2000, in the Southern District of Indiana, Evansville Division, MARK ALAN LANE, defendant herein, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

*[handwritten left margin: Contract Count of underlying offense]*

*[handwritten: Drug count; 770 grams, Expert Witness]*

*[handwritten: t-4.]*

*[handwritten: 21]*

1      MR. DANKS:  Frankly, I found this case to be extremely

2   frustrating for me.  As the Court's pointed out, Mark is 31

3   years old.  He has no prior criminal convictions.

4      THE COURT:  If you're talking about generally as to

5   what a sentence should be, let's wait on that.  I want to make

6   sure to cover all the objections.

7      MR. DANKS:  I have nothing else to add to paragraph

8   one.

9      THE COURT:  Okay.  Paragraph two, the defendant has

10   always accepted responsibility, has never shown disrespect for

11   the Court.  He just had difficulty accepting the plea.

12   Anything you wish to add to that?

13      MR. DANKS:  No, sir.

14      THE COURT:  Paragraph three, initially cooperated with

15   the United States Attorney, resulted in several codefendants

16   being indicted.  He later terminated his cooperation on the

17   advice of his former attorney.

18   Anything you wish to add to that?

19      MR. DANKS:  No, sir.

20      THE COURT:  Defendant is 31 years of age, no prior

21   criminal convictions, paragraph four.  Anything you wish to add

22   to that?

23      MR. DANKS:  No, sir.

24      THE COURT:  Base offense level should be 32, as he

25   admitted to the conspiracy to possess with the intent to

Judy Farris Mason, CSR

Ex. 5

22

1    deliver and distribute in excess of 500 kilograms of

2    methamphetamine.

3            MR. DANKS:  No, sir.

4            THE COURT:  Defendant's offense level should not be

5    increased by two points for having possessed a firearm, as

6    defendant had a valid gun permit and was not engaged in

7    trafficking at the time of the attempted arrest.  Anything you

8    want to --

9            MR. DANKS:  No.

10           THE COURT:  Mr. Blackington, do you want to respond to

11   that?

12           MR. BLACKINGTON:  Do you want to just take these

13   issues one at a time or -- I mean, there are some factual

14   differences I have here.

15           THE COURT:  Let's just take them as I'm going through

16   them.  Do you have any response to the possession of a firearm?

17           MR. BLACKINGTON:  Your Honor, just starting at the

18   top, first of all, prior plea negotiations are, of course,

19   inadmissible, and my recollection is that all the offers were

20   higher than 144 months, but that's immaterial at this point.

21           THE COURT:  That's true.

22           MR. BLACKINGTON:  Regarding the possession of the

23   firearm, at this point I simply rest on the evidence that was

24   presented during the course of the plea hearing.  Mr. Lane, on

25   September 1, after speeding away from law enforcement officers,

Judy Farris Mason, CSR

Ex. 6

23

1    testimony you desire, make any comment you wish, or have your

2    attorney speak on your behalf regarding the appropriate

3    sentence in this case.  The government also has the same

4    opportunity to present evidence, testimony, or comment.

5        Do you understand this?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Mr. Danks, evidence, testimony, comment?

8         MR. DANKS:  Yes.  Thank you, Judge.

9        As I began to indicate initially, I found this case to be,

10   frankly, very frustrating.  My evaluation of the case was that

11   the evidence was overwhelming, that Mr. Lane stood a very slim

12   chance of being successful at trial.

13             THE COURT:  Well, a confession will do that every

14   time.

15        MR. DANKS:  As well as many other types of evidence,

16   as well.

17       The United States, in my opinion -- without going into

18   specifics of any type of offers that were made to Mr. Lane, I

19   felt our conversations -- that they were being very reasonable,

20   frankly, considering the circumstances of the offense and the

21   amount of drugs that were involved.

22       And in dealing with Mr. Lane, I found he's a very pleasant

23   individual.  He's 31 years old; he has no criminal convictions.

24   But whatever offers may have been made, he didn't have a

25   difficult time accepting responsibility for what he did; he had

*no confession*
*or*
*23's*

                    Judy Farris Mason, CSR        Ex. 7

                                                          24

```
 1   a very difficult time accepting spending a lot of time in
 2   prison, as anybody would, particularly somebody that's never
 3   been in jail before.
 4       But in any event, because his plea was not timely, now
 5   under the guidelines he is facing so, so much more time than he
 6   would have been if his plea had been timely.  And I would ask
 7   the Court --
 8           THE COURT:  I don't understand what you're talking
 9   about.  I gave him acceptance of responsibility, the maximum I
10   could.
11           MR. DANKS:  I understand.
12           THE COURT:  I found that it was -- it really wasn't,
13   but I found that it was.
14           MR. DANKS:  And I appreciate that tremendously.
15           THE COURT:  Okay.
16           MR. DANKS:  Had his plea been made timely -- I don't
17   want to get into --
18           MR. BLACKINGTON:  I think what he's referring to, Your
19   Honor -- and I have no objection to him talking about the plea
20   negotiations in this context.  We had extended an offer for him
21   to receive a 5K motion; it wasn't the departure he talked about
22   before.  But because he didn't accept that offer in a timely
23   manner, we pulled back and refused to file the 5K motion.
24           THE COURT:  Okay.  All right.
25           MR. DANKS:  But in any event, because his plea was not
```

Judy Farris Mason, CSR                                    Ex. 8

25

Westlaw.

52 Fed.Appx. 838    *Presentence report used IN - Camera*    Page 1

52 Fed.Appx. 838, 2002 WL 31769476 (C.A.7 (Ind.))
**(Cite as: 52 Fed.Appx. 838)**

H
U.S. v. Lane
C.A.7 (Ind.),2002.
This case was not selected for publication in the Federal Reporter.NONPRECEDENTIAL DISPOSITIONTo be cited only in accordance with Fed.R.App.P. 32.1.

→ United States Court of Appeals,Seventh Circuit. ←
UNITED STATES of America, Plaintiff-Appellee,
v.
**Mark A. LANE, Defendant-Appellant.**
**No. 02-1642.**

Submitted Oct. 1, 2002.FN*

FN* Appellant Lane filed a motion to waive oral argument, which we granted. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2).
Decided Dec. 2, 2002.

Defendant was convicted in the United States District Court for the Southern District of Indiana, Richard L. Young, J., of conspiracy to possess with intent to distribute and to distribute methamphetamine and conspiracy to launder monetary instruments, and he appealed. The Court of Appeals held that: (1) imposition of three-level upward adjustment for defendant's supervisory role in drug conspiracy was supported by evidence, and (2) defendant waived any objection to imposition of enhancement.  *841(a)(1), 846*

Affirmed.
West Headnotes
**[1] Sentencing and Punishment 350H ⟸752**

350H Sentencing and Punishment
　350HIV Sentencing Guidelines
　　350HIV(C) Adjustments
　　　350HIV(C)2 Factors Increasing Offense
Level

350Hk752 k. Organizers, Leaders, Managerial Role. Most Cited Cases
Imposition of three-level upward adjustment for defendant's supervisory role in drug conspiracy was supported by evidence that defendant recruited two other individuals to sell drugs for him, and was their sole source of drugs. U.S.S.G. § 3B1.1, 18 U.S.C.A.

**[2] Sentencing and Punishment 350H ⟸752**

350H Sentencing and Punishment
　350HIV Sentencing Guidelines
　　350HIV(C) Adjustments
　　　350HIV(C)2 Factors Increasing Offense
Level
　　　　350Hk752 k. Organizers, Leaders, Managerial Role. Most Cited Cases
Defendant waived any objection to imposition of three-level upward adjustment for his supervisory role in drug conspiracy, where defendant objected to three recommendations in presentence report (PSR), but failed to object to supervisory role adjustment before sentencing. U.S.S.G. § 3B1.1, 18 U.S.C.A.

*838 Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. No. 3:01CR00003-001. Richard L. Young, Judge.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

*ORDER*

**1 Mark Lane ("Lane") pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and one count of conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h), (a)(1)(A)(i), without the benefit of a plea

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*My Presentence report show (C+J) 841(a)(b) Excess of 15 kilograms, 846 (235 pounds)*

52 Fed.Appx. 838                                                          Page 2

52 Fed.Appx. 838, 2002 WL 31769476 (C.A.7 (Ind.))
(Cite as: 52 Fed.Appx. 838)

agreement. The district court sentenced Lane to a 360-month prison term on the drug count and a concurrent 240-month term on the money laundering count, followed by five years of supervised release. Lane contests the district court's imposition of a three-level upward adjustment under U.S.S.G. § 3B1.1(b) for his aggravating role in the offense. We affirm the sentence imposed by the district court. *SEE: 2 Dr.1*

Lane admitted the following facts, which are taken from his plea colloquy and the *839 presentence investigation report ("PSR"). From June 1999 through May 2000, Lane received methamphetamine from David Merritt approximately every two weeks, obtaining around 200 pounds during that period. Lane then switched suppliers, buying drugs from one of Merritt's associates, Jerome Davis. Until his arrest in September 2000, Lane received approximately 35 pounds of methamphetamine from Davis. Merritt and Davis both fronted Lane drugs on consignment. After taking a portion of the drugs to support his own addiction, Lane cut the drugs and resold or fronted them to at least seven other individuals.

In September 1999, Mr. Lane recruited Elizabeth Hill ("Hill"), a coworker, to sell methamphetamine for him. Special Agent Michael Kress of the Drug Enforcement Administration testified that Lane had provided Hill with transportation to and from work, and it was during these trips that Lane recruited Hill to sell drugs for him. (P. Tr. 34.) Kress also testified that Lane established the time and location for each drug delivery to Hill as well as the time and location for each cash payment from Hill. (Id.) Lane fronted drugs to Hill from September 1999 until his arrest the following year, except for a period in December 1999 when Lane ceased supplying Hill because she fell behind on her payments.

In February 2000, Lane recruited Brad Mattingly ("Mattingly") as a drug dealer. Mattingly, who had previously been obtaining methamphetamine from Hill, approached Lane in early 2000 to ask for money in order to post bond for an incarcerated friend. (P. Tr. 33.) Once this relationship had been established, Lane asked Mattingly to sell drugs

for him directly, effectively eliminating Hill's role as intermediary. (Id.) As in his dealings with Hill, Lane established both the time and the location for each drug delivery to Mattingly, as well as the time and the location for each drug payment from Mattingly. (P. Tr. 34.) Thus, with respect to both Hill and Mattingly, Lane determined where the drug exchanges would occur as well as making all the arrangements, controlling when and where he collected money for the drugs they sold.

Lane fronted an ounce weekly to Hill from September 1999 to January 2000, and nine ounces per week from January 2000 until Hill's arrest in August 2000. From February 2000 until his arrest in September 2000, Lane provided methamphetamine to Mattingly in increasing quantities. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ supplier. Shortly thereafter, officers arrested Lane. A grand jury later returned an indictment charging him with the drug and money laundering offenses.

**2 Lane pleaded guilty to the indictment. At sentencing, represented by counsel, he conceded the factual accuracy of the PSR while objecting to certain of its recommendations-i.e., calculation of the base offense level, a two-level increase for possessing a firearm, see U.S.S.G. § 2D1.1(b)(1), a three-level upward adjustment for assaulting a federal law enforcement officer while attempting to flee, see U.S.S.G. § 3A1.2(b), and a three-level upward adjustment for obstruction of justice, see U.S.S.G. § 3C1.1. In short, Lane contested every pertinent offense-level calculation in the PSR except the three-level upward adjustment for his role in the offense. The court considered each objection, and also gave Lane another opportunity to object to its findings before imposing his sentence, which Lane refused. Relying on Agent Kress' testimony and the facts in the PSR (which Lane did not dispute), the court found that Lane had "set the parameters for the *840 drug deals and the money collection. He supplied methamphetamine to be dealt by others and recruited sellers to deal methamphetamine" and thus acted as a "manager or supervisor" in the criminal activity.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



To: U.S. Probation Officer
    101 U.S. Court House
    Indianapolis, Indiana 46204

By: Mark A. Lane # 06503-028
    Federal Correctional Institution
    P.O. Box 5000
    Greenville, Illinois 62246

RE: Sellers Letter:

Dear Holly G. Barrineau:

  I was glad to see that you have been getting my mail. I sent more than Four (4)
letters or 'reports'. *ATT: 1-2*

  I can use the Privacy Act or Sellers to make you **'Verify'** your records and if
you fail to maintain your records, the court can impose a civil fine!

  The Presentence Report indicates I was arrested September 1, 2000. I sent my
F.B.I. arrest record and State report from September 1, 2000. I was not formally
charged September 1, 2000 under Indiana Codes, Sec: 35-48-1-1.

  The point of that is, it's Illegal for the police to release. See: Indiana Law
or Federal Rules of Criminal Procedure.

  Next, my Presentence Report does say excess of 15 Kilograms or a Base Offense Level
38., It also says 235 Pounds are involved in this case. I would like for You to
**"Verify"** the 235 Pounds. *ATT: 3-4*

  I sent you a copy of the Expert Witness and it shows 770 grams Beyond a Reasonable
Doubt in the case **Not** 235 Pounds.

  I got a smile on "My Counsel and No Objection" that you wrote in your letter and
I hope you got the Addendum and 'Fax' dated February 14, 2002, which shows Base
Offense Level 32 for 500 Grams. *ATT: 5-6*

  The Criminal Complaint alleges I made an out of court statement (Hearsay) on
September 1, 2000. The Fifth Amendment also says, 'No Person Shall Be Compelled
To Be A Witness Against Himself Or Denied Of Due Process Of Law'.

  I was Indicted for a Conspiracy involving 500 Grams or 841(a)(1). I should Not
have to tell you 500 Grams is a Base Offense Level 32 or 500 Grams to 1.5 Kilograms.
See: Expert Witness or Chemist Report.

  I plead guily as charged to 500 Grams so that would be the Offense of Conviction
and the 770 Grams come from me (530.5 Grams) and Liz Hill on August 28, 2000.,
removed State to Federal?

C.C. Mr. Pickens, Unit Manager          THANK-You!
   INS-Mai 4/3/01                        3-28-07

                                              A

                                              28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### PROBATION OFFICE

**Barbara J. Roembke**
**Chief Probation Officer**

Reply to:  Indianapolis

101 U.S. Courthouse
46 E. Ohio Street
Indianapolis, IN 46204
Voice: (317) 229-3750

March 21, 2007

Mr. Dennis Pickens, Unit Manager
100 U.S. Hwy 40 & 4th Street
Greenville, IL 66246

Re:    LANE, Mark
         Reg. No. 06503-028
         Letter dated March 15, 2007

Dear Mr. Pickens:

Your letter with Mr. Lane's attachment was forwarded to me for response. I note this is at least the fourth such letter from Mr. Lane regarding the matter of the drug amount with which he was charged and convicted. Since it is difficult to determine from his letter what his exact issues are, I will take it paragraph by paragraph.

First, he makes a point that he was not formally charged in state court. The presentence report indicates only that he was arrested.

Next, he says something about "530.5 grams, expert witness." I have no idea to what he is referring.

He then writes that he pled guilty as charged to 500 grams, not the Indictment. Since the Indictment charged him with conspiracy to possess with intent to distribute and to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, his point is unclear.

Next is the question, "Does the 235 pounds exist?" and something about due process. Since Mr. Lane and his counsel did not object to the presentence report as written, it is presumed he had no quarrel with the drug amount at the time of his sentencing. He is unclear why this became an issue after his sentence was imposed.

Mr. Lane then indicates, "The Guid (sic) Line provision would be excess of 15 kilograms or a base offense level of 38." That is consistent with the presentence report.

His next issue has to do with the Court using the word "confession" "as a stipulation for (Relevant Conduct) 1B1.3, or to find the 235 pounds existed. If it would be a stipulation to a more serious offense, the terms of the plea are to be in open court in writting (sic) or orally made on the record." Again, I have no idea what this is about, but I believe he thinks since he was charged with and convicted of involvement with more than 500 grams of methamphetamine, and the guideline calculations are based on more than 15 kilograms of methamphetamine, those guidelines were for a more serious offense than that for which he was convicted. Since 15 kilograms is in excess of 500 grams, this notion would be erroneous.

Mr. Lane's closing paragraph says he hopes to receive "verification of a stipulation or a Grand Jury Indictment." I'm sure he was shown a copy of the Indictment filed against him; I do not know to what other indictment he may be referring. Also, he was present for any stipulations regarding drug amounts or any arguments made to establish drug amounts. As in many drug cases, the amount was probably extrapolated from his statements to law enforcement regarding his trafficking activities.

I hope this responds to Mr. Lane's concerns, but I suspect it will not. I would suggest if he chooses to compose another letter regarding his issues, he seek the assistance of someone who can help him better express his thoughts in writing. This would make a satisfactory response more likely.

Sincerely,

Holly G. Barrineau

Holly G. Barrineau
Supervising U.S. Probation Officer

HGB/hgb



TO: U.S. Probation Officer
101 U.S. Court House
Indianapolis, Indiana - 46204

BY: Mark A Lane / 06503-028
P.O. Box 5000
Greenville, IL. 62246

RE. Letter Dated 3-28-07, to "VERIFY" Facts in
Presentence report.

Dear Barbara J Roembke:

I have not heard back from Ms. Holly G.
Barrineau so I wanted to write a Follow up letter.
"IF" My records are in ERROR, you need to
let it be known so the Bureau of Prisons
(B.O.P) can Maintain there records.
My Criminal Judgement is based on the
Fact that the 235 pounds exist and there
would be an Indictment that say excess of
15 Kilograms.
My Case Manager said, "We would have the
Criminal Judgement to fall back on." I did not
say anything, That would be a False Statement
or Wrong answer.
I hope to hear from you and "Thank-you"
For your time,

C.C.                              Respectfully
Mr. Pickens, Unit Manager (1)    Mark A. Lane 4-22-07

EX- 31

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _LANE, Mark A._    _06503-628_    _H2B_    _F.C.I. Greenvill_
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST**

I Made a request For an updated Presentence report From The Probation officer. I Would Like For My "records" to Match My Grand Jury Indicta 846, 500 grams 841(b)(1). I love to attach Exhibits Just in case you force me into a court?

_9-25-07_    _ATT: 1-17_    _Mark A. [signature]_
   DATE                                SIGNATURE OF REQUESTER

**Part B– RESPONSE**



RECEIVED
SEP 26 2007
WARDEN'S OFFICE
FCI GREENVILLE, IL

_____    _____
   DATE                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _4(n47-F1_

                              CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    ☺    _____    _32_
   DATE                RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                        BP-229(13)
USP LVN                                 APRIL 1982

**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #467747-F1**

This is in response to your Request for Administrative Remedy received on September 26, 2007, in which you seek to update your pre-sentence report.

This issue was addressed with your Request for Administrative Remedy (438889-F2) received on January 23, 2007, as well as your Request for Administrative Remedy (451612-F2) received on May 3, 2007. A response to your concerns was given to you by the United States Probation Office. The response was clear and addressed your specific issues in your pre-sentence report. You have provided no additional information that would warrant a change in that response.

Based on the above information, your Request for Administrative Remedy has been denied as repetitive of a previous filing. If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

W. A. Sherrod, Warden

Date 10/3/07

EX - 33

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: __LaNe, Mark A.__        __06503-028__    __H2B__    __GreenVille__
      LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

Part A—REASON FOR APPEAL    The Warden's response is IN ERROR!
I Made a request For an "accurate", updated Presenten
report From The Probation OFFicer. I Would Like
For My "records" to Match My Grand Jury Indictme.
846, 500 grams 841(b)(1). I ATTACH EXhibits
Just IN Case you Force me into a Court room?

__October 8, 2007__    ATT: 1-17    __Mark A. Lane__
        DATE                          SIGNATURE OF REQUESTER

Part B—RESPONSE

_____        _____
        DATE                            REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

Part C—RECEIPT
                                              CASE NUMBER: _____

Return to: _____        _____    _____    __3 4__
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Admin Remedy Number:** 467747-R1

This is in response to your Regional Administrative Remedy Appeal dated October 8, 2007, in which you allege your Pre-sentence Investigation Report contains inaccurate information. You request that your records be updated to match your Grand Jury indictment.

We have reviewed your appeal and determined that the Warden's response adequately addresses your concerns. Specifically, this issue has been responded to in depth, both through the Administrative Remedy process (451612-R1 and 438889-R1), and via correspondence from the U.S. Probation Office (USPO). As indicated previously, the Bureau of Prisons has taken all measures necessary to address your concerns, and no change in your Pre-sentence Report is warranted per the USPO. If you wish to pursue this matter further, you are again encouraged to seek the advice of an attorney.

Based on the above, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

10-18-07
Date

Michael K. Nalley, Regional Director

$ex - 35$

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Lane, Mark A.      01563-028      H2B      GreenVille
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**

I made a request for AN "Accurate" presentence report from the Probation officer. The Probation office refused to "Verify" your records, Exhibits 8-9 I would Like My My records to Match My Grand Jury INdictment. 846, 500 grams (OKI). I ATTach Exhibits Just IN case you force me into a Court room! relief sought: Two (2) pages oN page Two?

THANK-You.

10-31-07      ATT: 1-18-21      Mark A. L
DATE                                        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____      _____
DATE                           GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 467747-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____      _____      36
DATE      SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

**Administrative Remedy No. 467747-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal in which you contend staff have not complied with the provisions of Program Statement 5800.11, <u>Inmate Central File, Privacy Folder, and Parole Mini-Files</u>.  Specifically, you contend the offense conduct information contained in your Presentence Investigation Report (PSIR) does not match your indictment.  You wish staff to pursue the matter.

Program Statement 5800.11 provides staff direction when inmates challenge information contained in the Presentence Investigation Report (PSIR).  Our information indicates staff complied with the directives set forth in the program statement.  We also understand the U.S. Probation Office (USPO) determined the matter did not require further scrutiny.  Two points come to mind.  First, the court apparently adopted the PSIR as accurate and factual at the time of sentencing.  Second, our information indicates USPO procedures do not allow for changes or addendums to the PSIR after sentencing, as it is a court document.  However, should the USPO, at any point, subsequently report the challenged information, or some part thereof is inaccurate, staff will include it in the central file.

Bureau staff maintain and disclose information as required by the Freedom of Information and Privacy Acts, to the extent they are applicable and in a manner consistent with Program Statement 1351.05, <u>Release of Information</u>.  Because of this, inmate records have long been exempted from the amendment and correction provisions of the Privacy Act.  Also, the maintenance and accuracy requirements, as referenced in <u>Sellers v. Bureau of Prisons</u>, 959 F.2d 307 (D.C. Cir. 1992), are not applicable because of an additional exemption applied in August 2002.

We find staff took reasonable steps to ensure the accuracy of challenged information as required by Program Statement 5800.11.  The matter does not require additional staff inquiries.  Accordingly, your appeal is denied.


_January 17, 2008_
Date

Harrell Watts, Administrator
National Inmate Appeals

_t-x-37_

I am requesting an updated presentence report That only shows 770 grams, a Base offense Level 32, Expert Witness, 2D1.1(U.S.S.G) and Indictment, 846, 500 grams 841(b)(1)

I'm Truely amazed! My Unit Manager response is ass-backwards." An updated P.S.I., was requested Then The Sellers Letter. The Purpose of The "Sellers" Letter is to "Verify" The Information which is Capable of being Verified., Remedy # 438889., Granted by Region.

I done a "Willfully" and "Intentionally", Just in Case, The False records result in an adverse determination toward an Individual (Me). Remedy # 451612

If the Probation officer Confirms that The Information in the report is INaccurate, STAFF Should insert a Note to the Effect in The File in order to ensure that NO decision affecting The inmate are based on The discredited INFormation. "STAFF SHOULD also request an updated Presentence report From The Probation officer. (Not Me).

Why Would I Contact an Attorney? The Operations Memorandum Says, STAFF is suppose to do this on behalf of The Bureau of Prisons! "The Procedures recommened below (Action) are intended to Minimize the Chances of Such award resulting From Future Challenges", SEE: Action

(1)

The Probation Office refused to "Verify" The 235 Pounds and The Base Offense level 38. The Statute Code of 841(α)(1), <u>846</u>

The Conspiracy Count Would be The Underlying offense., <u>846</u>, 841(α)(1). The Underlying offense Would be a Drug Conspiracy, 841(α)(1), <u>846</u>.

I want To ATTACH The Cop-out at Region. My Unit Manager Has to be Captain Kangaroo.

<u>Relief SouGHT</u>

For The Bureau of Prisons'., F.C.I. Greenville, To Follow The procedures recommened in The Operations Memmorandui and request an updated presentence report from The Probation officer. (Matches My Indictment)

(2)



**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

---

*400 State Avenue*
*Tower II, Suite 800*
*Kansas City, KS 66101*

September 12, 2007

Mark Lane
Register No. 06503-028
FCI Greenville
P.O. Box 5000
Greenville, IL 62246

Re:   Your Information Request Number

Dear Mr. Lane:

This is in response to your correspondence received in the FOIA Office on August 17, 2007, wherein you request to get your prison records "verified."

Please be advised, the nature of this inquiry is not properly addressed as a FOI/Privacy Act request. The Acts do not require the agency to create documents in response to information requests, only to consider responsive existing documents. You will need to be more specific as to what Bureau of Prisons documents you are requesting and resubmit your request.

In accordance with Federal Bureau of Prisons' policy and Program Statement 1330.13, Administrative Remedy Procedure for Inmates, you may seek formal resolution of a complaint which relates to any aspect of your imprisonment, including the accuracy of records, under the Administrative Remedy Procedure. This policy is available in the Inmate Law Library at your local institution.

I regret not being of more assistance to you in this matter.

Sincerely,

Regional Counsel

38

Number  066-93  (5820)

Date  March 15, 1993

Subject  Maintenance of Inmate Files

# Operations Memorandum

1.  <u>PURPOSE</u>.  The purpose of this Operations Memorandum is to advise Unit Team staff members of a recent case concerning staff response to a claim by an inmate that his central file contained <u>incorrect information</u>.

2.  <u>BACKGROUND</u>.  In <u>Sellers v. Bureau of Prisons</u>, 959 F.2d 307 (D.C. Cir. 1992), <u>the court held</u> that the Bureau of Prisons must maintain <u>accurate records of information which are capable of being verified</u>.  The case involved an inmate who was challenging information in his file, including a presentence report reference to an alleged bank robbery. The inmate contended that the bank robbery charge had been dismissed, and that its inclusion in the presentence report had resulted in the denial of parole and adverse determinations regarding <u>custody and security classifications</u>, job and quarters assignments, and the opportunity to earn money and good time.  The Parole Commission had noted in the inmate's file that he disputed the information in his record; the Bureau of Prisons apparently maintained the challenged information in the record without comment, despite the fact that the probation officer had written a letter indicating that the charge had been dismissed.

<u>The court held</u> that if an agency <u>willfully</u> or <u>intentionally</u> fails to maintain <u>accurate files</u>, and those records then result in an adverse determination toward an individual, the agency will be liable for money damages.  The rule of the case is that "the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual." <u>Sellers</u> at 312.  The <u>Sellers</u> court held that an agency does not meet the requirements of the Privacy Act simply by noting that the information is disputed.  <u>If the court were to find a willful or intentional failure to</u> maintain accurate records, the agency could be liable for

Exhibit 2

money damages to the inmate. Because inmates from all over the country may file Privacy Act suits in the District of Columbia, the <u>Sellers</u> case will affect all of our institutions. A final determination has not yet been made in <u>Sellers</u> regarding whether the Bureau's actions will be considered willful or intentional and therefore result in the granting of monetary damages to the inmate. The procedures recommended below in this Operations Memorandum are intended to minimize the chances of such award resulting from future challenges.

3. → <u>ACTION</u>.  Unit team staff need to take reasonable steps to ensure the accuracy of challenged information in an inmate's central file, particularly when the information challenged can be verified.  Initial reasonable steps include requiring specific action from the inmate, such as providing documents which support a challenge to the information in the files. The inmate can also be asked to provide the names of people to contact regarding the challenged information.

If an inmate is able to provide such information in support of a challenge, unit staff have a duty to investigate and to take steps to ensure the correction of any inaccuracies discovered.  Once a determination can be made by Bureau staff that information in an inmate's central file is incorrect, that information must not be used by staff.  For example, in a situation like <u>Sellers</u> where the inmate challenged the Presentence Report, unit staff should not change the report but should inform the probation officer that the report has been challenged.  If the probation officer confirms that the information in the report is inaccurate, staff should insert a note to that effect in the file in order to ensure that no decisions affecting the inmate are based on the discredited information.  Staff should also request an updated Presentence Report from the probation officer.  These procedures will be incorporated into the Central File Program Statement at the next annual review.


Patrick R. Kane
Assistant Director
Correctional Programs
Division

Wallace H. Cheney
Assistant Director
Office of General Counsel

EX- 40



**U.S. Department of Justice**
Federal Bureau of Prisons

_Federal Correctional Institution_

---

_100 U.S. Route 40 & 4th Street_
_P.O. Box 4000_
_Greenville, IL 62246_

June 26, 2007

Mark Lane
Reg. No.: 06503-028
FCI Greenville, IL 62246

Mr. Lane:

I have received your correspondence dated March 27, 2007, addressed to Nancy Robinson, United States Marshals Service, Office Of General Counsel. It has been forwarded to my office for a response.

In your letter, you request information in your presentence report and criminal judgement from the United States Marshals Service for a response concerning a seller's letter.

As mentioned in their response, the records you seek are under the jurisdiction and control of the Bureau of Prisons. Specifically, your unit team has made available the records you requested on several occasions. They have also drafted on your behalf, a Seller's letter to the United States Probation Office, Southern District of Indiana. In this letter, your unit team stated -

"Inmate Lane was originally sentenced in the Southern District of Indiana on February 27, 2002, to a 360 month term of incarceration for Conspiracy to Possess with Intent to Distribute and Distribute Methamphetamine and Conspiracy to Launder Monetary Instruments. Please see his attached concerns regarding his case and the information located in his PSI."

A response to your concerns was given to you by the United States Probation Office. The response was clear and addressed your specific issues in your pre-sentence report. A subsequent letter reiterated that based on their understanding of your concerns, no change in your PSIR was deemed appropriate at that time.

EX-41

Your concerns were also addressed in the Institutional Administrative Remedy Appeal Response (#451612-F2), as well as your Regional Administrative Remedy Appeal Response (#451612-R1).

You are again encouraged to seek advice of an attorney if you wish to pursue the matter further.

Sincerely,

W.A. Sherrod
Warden

Ex - 42

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __Lane, Mark A__  _____ __06503-028__ ___ __H2B__ ___ __Greenville FCI__
    LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.       UNIT       INSTITUTION

**Part A—REASON FOR APPEAL**    The Wardens response (Part B) is in error and the Regional Appeal response would be in error.

    I was granted a 'Sellers' letter to "Verify" facts in my Presentence Report and the Probation Office refuses to "Verify" the 235 Pounds. SEE A-G

    I wanted to create a record that the Bureau of Prisons is <u>Willfully</u> and <u>Intentionally</u> failing to maintain its records.

    These records are <u>not</u> exempt by Regulations or a Program Statement that has nothing to do with the Statute of Title 5§ 552(e)(5), (g)(1)(c), (g)(4). (Exhibit 2)

    I'm <u>no</u> agency so it's <u>not</u> my job to maintain false B.O.P. records. I have <u>no</u> plans to get an Attorney to fix false (B.O.P.) records.

    My Presentence Report and Criminal Judgement show 841(a)(1), <u>15 Kilograms</u>, 846., don't match my Indictment or Direct Appeal 846, <u>500</u> grams 841(a)(1). Your records are in error and you have been put on notice.

JUNE 20, 2007.  ATT: 1-10     _Mark A. Lane_    C.C. Family
DATE       ATT: A-G        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

**RECEIVED**

JUN 26 2007

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE                GENERAL COUNSEL

**Part C—RECEIPT**                CASE NUMBER: __451612-A1__

                                     CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____
DATE                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

43

**Administrative Remedy Number 451612-A1**
**Part B - Response**

You contend your PreSentence Report (PSR) contains inaccurate information. You request the inaccurate information be deleted.

Our review of this matter reveals both the Warden and Regional Director have adequately addressed your concerns. Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, provides specific instructions regarding inmate challenges to the accuracy of information contained within the central file and, specifically within the PSR. Succinctly put, the Bureau will relay such challenge to the U.S. Probation Office (USPO). If the USPO reports that the information is not accurate, staff will attach the inquiry and response to the challenged document and will note such in the activity record. Bureau staff will also review and correct Bureau generated report or data if warranted. Finally, if a corrected document is provided, it will be inserted and the inaccurate document removed. Prison staff have relayed your concerns to the USPO, who replied that no error was contained within the PSR and no change to the PSR was warranted. Beyond this inquiry, additional action is neither required nor contemplated.

The Bureau of Prisons maintains and discloses information as required by the Freedom of Information Act (5 USC § 552) and the Privacy Act (5 USC § 552a), to the extent they are applicable and in a manner consistent with 28 CFR Part 16 and Program Statement 1351.05, Release of Information. Inmate records have long been exempted from the amendment and/or correction provisions of the Privacy Act (5 USC § 552a(d)). Additionally, the maintenance and accuracy requirements of the Privacy Act (5 USC § 552a(e)(1) and (e)(5)), as referenced in Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992), are no longer applicable because of an additional exemption issued in August 2002. (See 67 FR § 31371).

Your appeal is denied.

_September 4, 2007_
Date

Harrell Watts, Administrator
National Inmate Appeals

EX - 44



## UNITED STATES DISTRICT COURT

**Southern District of Indiana**
**Evansville Division**
**Voice Line (812) 465-6426**
**Fax Line (812) 465-6428**

TO: _Scott_

FROM: _Dawn_

Date  _2-14-02_  "GO TO 2-28-02"

Description  Scott: Judge wanted you to see
the transcript of the hearing
held on 9-5-01. GO TO "9-10-01"

This is not an official transcript.

**Number of Pages Including this cover sheet**  _6_

_45_

1

1    September 5, 2001.

2         THE COURT:  Good morning.  We are here today in United

3    States of America versus Mark Lane, EV 01-CR-3-1.  Mr. Lane is

4    here in person, in custody, with his attorney, Scott Danks.

5    The United States is here by Assistant United States Attorney

6    Brad Blackington.

7         This matter is scheduled for trial next Monday; I believe

8    that's the 10th of September, and there's some items we need to

9    discuss, a motion in limine and anything else we need to

10   discuss prior to trial.  And also the Court's interested as to

11   whether or not there is going to be a plea and if there is, we

12   need to get a Petition to Enter a Plea and Plea Agreement

13   signed, obviously, prior to a jury coming in here.

14        So Mr. Danks what's the status here.

15        MR. DANKS:  Judge, at this point in time I've had

16   extensive conversations with Mr. Lane, and he's been provided

17   the opportunity to discuss the possibility of entering a plea

18   not only with myself but also with members of his family, and

19   at this point in time he is not inclined to do so; is that

20   correct?

21        THE DEFENDANT:  Yes.

22        THE COURT:  All right.  Mr. Lane, I want to make sure

23   you understand the possible penalties.  I know you've had an

24   initial hearing here, but it's my understanding -- and correct

25   me if I'm wrong, Mr. Blackington -- but upon conviction of

Judy Farris Mason, CSR

*Rule 10*
*846, 500*
*846(a)(11)*

46

2

1   these charges, you would face a mandatory life sentence in

2   prison; is that right, Mr. Blackington?

3          MR. BLACKINGTON:   That would be my position under the

4   Sentencing Guidelines, Your Honor.

5          THE COURT:   What other sentencing provisions is he

6   looking at?

7          MR. BLACKINGTON:   We think based on the weight of the

8   drugs, base offense level of 38, our position now and at

9   sentencing would be that he would get a two-level increase for

10  possession of a firearm during or in furtherance of a drug

11  trafficking offense, and then he'd get a three-level increase

12  based on managing or supervising one or more individuals in the

13  conspiracy, and that would give you a three-level increase and

14  the offense level 43.   That's what the sentence is, life.

15         THE COURT:   And you're saying level 38 is based on the

16  weight?

17         MR. BLACKINGTON:   The weight.

18         THE COURT:   What's the guidelines on the 38?

19  ⟶      MR. BLACKINGTON:   Anything of 15 kilograms or

20  31 pounds or more is base offense level 38.   841(a)(1)

21         THE COURT:   And the guidelines at 38 level are what?

22         MR. BLACKINGTON:   At level 38 are 235 to 293 and then

23  it goes up accordingly.

24         THE COURT:   So on a plea I would think the base that

25  you'd be beginning at would be 238 months; is that right, Mr.

47

1  Blackington?

2        MR. BLACKINGTON:  Yes, Your Honor.

3        THE COURT:  235 to 293?

4        MR. BLACKINGTON:  I'm sorry, 235.

5        THE COURT:  235 to 293, and that's based upon the

6  weight of the methamphetamine that you allegedly foresaw or

7  were in control of, and it goes up from there. [846] COUNT

8        So I want to make sure that you understand the possible

9  penalties here.  Do you understand that, Mr. Lane?

10        THE DEFENDANT:  Yes.

11  →    THE COURT:  All right.  And is it my understanding,

12  Mr. Blackington, that there's a confession here. 770 grams

13        MR. BLACKINGTON:  Yes, sir.  500 grams to 1.5 K.'o

14        THE COURT:  All right.  841(a)(1)

15        MR. BLACKINGTON:  I'd just add one more thing for the

16  record, Your Honor.  Our position in acceptance of

17  responsibility prior to the hearing today was that he'd

18  probably get the three levels for acceptance.  To go from three

19  to two levels, you need to timely notify authorities of your

20  intention to plead guilty, thereby permitting the government to

21  avoid preparing for trial and permitting the Court to allocate

22  its resources efficiently.  I've already started trial

23  preparations.  I'm going to be doing it more this week and over

24  the weekend, and I'm sure that the Court, if it has not

25  already, will have ordered a jury and will have blocked out the

Judy Farris Mason, CSR

43

4

1   time. And I think at this point that third level for
2   acceptance, my position on it is that he shouldn't get it from
3   this point forward. I'd be willing to concede right now that
4   he'd get three, but from this point forward.
5       THE COURT: There's a motion in limine relative to
6   admission of seized firearms into evidence.
7       MR. DANKS: Judge, I apologize. I was not aware of
8   the fact that we were going to address the motion in limine at
9   today's hearing. I don't have the file. I did review that at
10  the time I received it, but I was informed that we were coming
11  over today to discuss the possibility of Mr. Lane entering a
12  plea and to make a record on that, as to whether he was going
13  to. If so, we could proceed with the plea. I would ask that
14  we not address the motions in limine at this time.
15      THE COURT: You've received the government's proffer
16  in support of coconspirators' declaration -- 841 (a)(1) 500 grams,
17      MR. DANKS: I have.
18      THE COURT: -- government's ^expert regarding expert
19  witnesses? Liz + Mark    770 grams    841 (c)(1)
20      MR. BLACKINGTON: I also filed a motion 609.
21      THE COURT: You received that?
22      MR. DANKS: Yes, I have.
23      THE COURT: All right. Mr. Lane, I just want to make
24  sure today that you understood that your trial was Monday; is
25  that right?

Judy Farris Mason, CSR

*[handwritten left margin: Liz Hill + Brad]*

*[handwritten left margin vertical: Record on 2-28-02]*

*[handwritten bottom right: 49]*



5

1    THE DEFENDANT:  Yes.

2    THE COURT:  And you wish to go to trial and have a

3  trial by jury?

4    THE DEFENDANT:  Yes.

5    THE COURT:  Do you understand that I will not accept

6  any plea bargains, any plea agreement after this; do you

7  understand that?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Okay.  Any further record we need to make

10  today?

11    MR. BLACKINGTON:  No, Your Honor.

12    MR. DANKS:  No, thank you, Judge.

13    THE COURT:  Thank you.

14

15

16

17

18

19

20

21

22

23

24

25

*(handwritten annotations throughout:)*

Jerome Davis
2002.1 C.C.6.1
Title 21 § 848
Excess of 15
Kilograms

Level 45 →

846          48,
            – 6
           = 42

841(a)(1)

→ 46 – 4 = 42; 500 Kilograms
                235 Pounds

→ 44
→ 43; Life
→ 42; 360 To Life

→ 40

Excess of 15 Kilograms    → 38; Excess of 15 Kilograms
U.S.S.G. 2D1.1 Tops out at      (33 Pounds)
a level 38

→ 36; 188 To 235 Months

→ 34; 151 To 188 Months

500 grams, 846 ←   → 32; 500 grams, 841(B)(1)
                        (770 grams)

Court switched The
"Crime Charged"

E X–50 Charged

Judy Farris Mason, CSR



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

January 17, 2008

Mark A. Lane
Federal Correctional Institution
P.O. Box 5000
Greenville, IL 62246

Dear Mr. Lane:

Thank you for your recent correspondence. After a careful review of your information, we have found that we have no jurisdiction over this matter. Since we are the U.S. Attorney's Office for the District of Columbia, we handle cases that primarily occur within the District. Your material was forwarded to the Special Litigation Section of the U.S. Department of Justice, Civil Rights Division. They are located at: 950 Pennsylvania Avenue, NW, PHB, Washington, D.C. 20530. We appreciate you bringing this matter to our attention.

Sincerely,

*Criminal Division Response Team*

The Criminal Division Response Team

5-3

FILED
U.S. DISTRICT COURT
EVANSVILLE DIVISION

JAN 22 2008

SOUTHERN DISTRICT OF INDIANA
LAURA A. BRIGGS
CLERK

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | )   EV 01-CR-03-01-Y/H |
| | ) |
| MARK A. LANE, | ) |
| | ) |
| Defendant. | ) |

### Entry Discussing Motion for Production of Oath

The defendant has requested a copy of the undersigned's oath. This request is **granted** to the extent that the plaintiff is notified that 28 U.S.C. § 453 provides that each United States district court judge shall take the following oath or affirmation before performing the duties of his office:

"I, _____  _____, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____ under the Constitution and laws of the United States. So help me God."

The foregoing oath was taken as prescribed by law and from the foregoing the defendant is now informed of the oath taken by the undersigned.

**IT IS SO ORDERED.**

RICHARD L. YOUNG, Judge
United States District Court

Date: _1-22-08_

Distribution:

Mark A. Lane
Reg. No. 06503-028
Federal Correctional Institution
P.O. Box 5000
Greenville, IL  62246

Office of the United States Attorney
10 West Market Street    Suite 2100
Indianapolis, IN  46204-3048

54
44

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### PROBATION OFFICE

**Barbara J. Roembke**
**Chief Probation Officer**                                    **Reply to:**  Indianapolis

101 U.S. Courthouse
46 E. Ohio Street
Indianapolis, IN 46204
Voice:  (317) 229-3750

February 12, 2008

Mr. Mark Lane
Reg. No. 06503-028
P.O. Box 5000
Greenville, IL 62246

Re:    Your letter dated February 3, 2008

Dear Mr. Lane:

I have reviewed your most recent letter.  Again, I am not clear about your point; however, I'll try to help you understand what may be confusing you.

As I noted in a previous letter, if you think since you were charged with and convicted of involvement with more than 500 grams of methamphetamine, and the guideline calculations are based on more than 15 kilograms of methamphetamine, those guidelines were for a more serious offense than that of which you were convicted, you are incorrect.  Fifteen kilograms is in excess of 500 grams, so a person involved with 15 kilograms of a mixture or substance containing a detectable amount of methamphetamine would be charged with an amount "in excess of " or "more than" 500 grams.  If you look at 21 U.S.C. §§ 841(b)(1)(A) and (B), you will see that 500 grams is greatest amount of a methamphetamine mixture found in the statute.  I have never seen a defendant in this district charged with any specific amount greater than 500 grams of a methamphetamine mixture, since the words "500 grams or more" covers all such amounts.

You mentioned specific amounts of methamphetamine in a chemist's report, which you say totaled 770 grams.  Your guidelines were not based solely on those amounts.  If you read the Offense Conduct section of your PSR, you will see that individuals provided statements about the multiple-pound amounts you sold over an extended period of time.  It appears the Court found that information to be credible and held you responsible for more than 15 KG of methamphetamine.  As noted above, that amount is greater than 500 grams and is therefore consistent with the charge to which you pled guilty.

55

This office can do nothing to "verify" the amount of methamphetamine for which the Court found you responsible. The probation officer who conducted the presentence investigation apparently found the government's evidence persuasive, as did the Court. The entire amount of methamphetamine is not in a property room somewhere, and I doubt that most of it ever was; however, it is not necessary for the government to "catch" a defendant red-handed with an every gram or kilogram of an illegal drug in order for the Court to find that defendant responsible for it. I cannot imagine that your attorney did not explain that to you prior to your guilty plea.

This office cannot do anything more to assist you in understanding the sentence imposed by the Court in your case. If you are not satisfied with this response, I suggest you discuss the matter with an attorney.

Sincerely,

*Holly G. Barrineau*

Holly G. Barrineau
Supervising U.S. Probation Officer

HGB/hgb

cc: Mr. Clint Harkins, Case Manager

56



U.S. Department of Justice

Civil Rights Division

168-25-0/284090

*Special Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

February 14, 2008

Mark Lane
Inmate# 06503-028
Federal Correctional Institution
P.O. Box 5000
Greenville, IL 62246

Dear Mr. Lane:

Thank you for your correspondence. The Special Litigation Section of the United States Department of Justice has reviewed your correspondence, and we have determined that our office does not have jurisdiction in this matter. We believe that authority for handling this matter may rest with the Bureau of Prisons, and we will be referring your letter to that agency for action. If you wish to follow-up with the Bureau of Prisons, they may be contacted as follows:

Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534
(202) 307-3198

Sincerely,

N'Zinga Adelona
Special Litigation Section
Civil Rights Division

57

TO: U.S. Probation office
101 U.S. Court house
Indianapolis, IN 46204

BY: Mark A. Lane / 06503-028
P.O. Box 150160
Atlanta, GA. 30315

CAUSE No. 03-01-X1A
EV-01-CR-D.E. T.F.
O.C. D.E. T.F.
(Desert Fox)

RE: Bureau of Prisons "records", Presentence report.

Dear Holly G. Barrineau:

Are you sure, you are the Supervising, U.S. Probation officer? I was Indicted For a Conspiracy To Violate the Narcotic laws; 846, 500 grams 841(a)(1); 2-14-01
    ON September 10, 2001, I plead guilty as "charged '500 grams", (6 B1.1 @1., Plea). The Statutory Index, Appendix "A" For a "Conviction" under Title 21 U.S.C. § 841(a)(1) and (b)(1) -(3) go To 2D1.1 "Drug Amount"
    770 grams is a base offense level 32; That is The offense of Conviction and Applicable Guidlines. SEE: Sentencing Table [ IN Months of Imprisonment], offense level / Criminal History (No priors).
    Are you sure you are on Top of your Job? When The Court changed The 500 grams (770 grams) To 500 Kilograms (235 pounds) on February 28, 2002. My Presentence report shows a base offense level 46., page 23, Sentencing Hearing and part D, Sentencing options., paragraph 54., Guidline Provision. The Guidlines STOP at a level 38., so a level 46 does Not Exist!! SEE: (1)  2D1.1

58

IF I have a conviction under 841(c)(1), The Drug Amount would **Exist!** I did send you a Chemist report on The Drug Amount, 770 grams. → For The Bureau of Prisons records To be "Accurate", There would be a Chemist report for 235 pounds and an Indictment That says Excess of 15 Kilograms. [ Offense of conviction and Applicable Guidlines level 38]. ~ Can you "Verify" any of This?, That's a Yes or **NO** Question!!

I hope to Lear From you! I also Went To Thank-you For your Time in This matter!! My old Case-Manager (Clint Hoskins) was about as smart as Fred Flintstone!

Respectfully
Mauc e
4-10-08

STATE TO
9-1-00:
Federal

C.C.
Family ✓
Court, Judge Young ✓
Mr. Morrison, ✓
"you still have Time"!

841(c)(1)

500 Kilograms (235-pounds)
→ 46 - 4 acceptance of = 42; 360 To Plea                 Life
→ 44
→ 42  360 To Life
→ 41
→ 40
→ 38  Excess of 15 Kilograms
→ 36
→ 34
→ 32  560 grams
(2)      (770 grams)

5-9 court suite 40
crimic
charge